# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**TRANSLAND FINANCIAL SERVICES, INC.,**

                    **Plaintiff,**

-vs-                                                    **Case No.  6:07-cv-263-Orl-31DAB**

**WELLS FARGO VENTURES, LLC, and WELLS FARGO BANK, N.A.,**

                    **Defendants.**

_____

# ORDER

This matter comes before the Court on Defendants' Motion to Dismiss and For More Definite Statement (Doc. 25), and Plaintiff's Response thereto (Doc. 27).

## I. Background

Plaintiff, Transland Financial Services, Inc. ("TFS"), filed a Complaint (Doc. 1) in this Court on February 22, 2007, and named three Defendants: Wells Fargo Ventures, LLC ("WFV"), Wells Fargo Banks, N.A. ("WFB"), and HomeLife Financial, Inc. ("HFI"). Four days later, Plaintiff filed an Amended Complaint (Doc. 5) which names only WFB and WFV as Defendants. This Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332. (Doc. 5 at 2). The following is a summary of the relevant facts, as alleged in the Amended Complaint.

In November 1999, TFS entered into a branch operating agreement ("the Agreement") with Arden Doss ("Doss"), which established and governed the relationship between TFS and Doss'

office in Port St. Lucie, FL ("the Branch Office"). The Branch Office thus became affiliated with

TFS and was operated by Doss under the name "HomeLife Financial."

The Agreement established the following business relationship: the Branch Office

processed residential loan applications that it received from Renar Development Company[1]

("Renar") for customers who had contracted with Renar for the construction of a home; the Branch

Office then remitted all loan applications to TFS headquarters for initial approval; after a

customer's home was completed TFS would re-qualify and approve the loan for closing and the

Branch Office would then coordinate and complete the closing with Renar and the customer.[2]

In approximately August of 2005, WFV and WFB began discussing the possibility of

acquiring and/or forming a joint venture with Doss. For five months, Defendants were in constant

contact with Doss and made multiple presentations, all in an effort to induce Doss to terminate the

Agreement. Defendants' solicitations were concealed from TFS. Defendants consistently

maintained the position that their willingness to enter into a joint venture with Doss was premised

on acquisition of the Pipeline Loans. Defendants also solicited business and loan files, belonging

to TFS, from the Branch Office.

In January 2006, Doss terminated the Agreement as a result of Defendants' actions. TFS

informed the Branch Office that it would be closed as of February 10, 2006. TFS also immediately

informed Doss and the Branch Office that, pursuant to the Agreement, the Pipeline Loans were the

---

[1]Renar is a residential construction company and Doss is its President. The Agreement established the relationship between TFS and Renar.

[2]It appears that the Plaintiff refers to loans that have begun this process as "Pipeline Loans", although neither party has offered a definition of this term.

property of TFS and that TFS expected to complete such transactions in the ordinary course of

business. Doss, at the request of WFB, diverted those loans to HFI (his new business venture with

WFB). TFS contends that WFB did this knowing that the loans were the property of TFS.

   After the termination of the Agreement, the Branch Office became affiliated with WFV

and was operating a competing mortgage business under the name "HomeLife Financial." TFS

alleges that Defendants sent correspondence to Pipeline Loan customers using the name

"HomeLife Financial" to intentionally deceive customers into believing that the lender closing

their loans had not changed.

   TFS alleges that Defendants actions have caused it to suffer damage, and thus brings this

action for monetary, as well as equitable, relief.

## II. Standard of Review

   In ruling on a motion to dismiss, this court must view the complaint in the light most

favorable to the Plaintiff, and must limit its consideration to the pleadings and any exhibits

attached thereto. *Scheuer v. Rhodes,* 416 U.S. 232 (1974); Fed. R. Civ. P. 10(c).  The Court will

liberally construe the complaint's allegations in the Plaintiff's favor. *Jenkins v. McKeithen*, 395

U.S. 411, 421 (1969).  The Court will not dismiss a complaint for failure to state a claim unless it

appears beyond a doubt that the Plaintiff cannot prove any set of facts that support a claim for

relief. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).  In ruling on a motion to dismiss, "conclusory

allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not

prevent dismissal." *Davila v. Delta Air Lines, Inc.,* 326 F.3d 1183, 1185 (11th Cir. 2003).

   In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure

12(b)(6) ("Rule 12(b)(6)"), "courts must be mindful that the Federal Rules require only that the

complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *U.S. v. Baxter Intern., Inc.,* 345 F.3d 866, 880 (11th Cir. 2003).  This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action.  *Roe v. Aware Woman Ctr. for Choice, Inc.,* 253 F.3d 678, 683 (11th Cir. 2001). Instead, the complaint need only "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Id.* (internal citation and quotations omitted).  "A complaint need not specify in detail the precise theory giving rise to the recovery.  All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests."  *Sams v. United Food and Comm'l Workers Int'l Union,* 866 F.2d 1380, 1384 (11th Cir. 1989).

**III. Legal Analysis**

Plaintiff's Amended Complaint contains ten counts, however, Plaintiff has agreed to voluntarily dismiss without prejudice Counts VII and VIII. (Doc. 27 at 10). Plaintiff also agrees to a dismissal of Count IV as it relates to WFB. (Doc. 27 at 7, 10). Therefore, the Court will not address Defendants' arguments regarding those claims. Of the remaining counts, there are three that attempt to bring claims against non-party HFI (as well as WFV and WFB): Counts I, V and IX. Therefore, these Counts are dismissed insofar as they seek relief from HFI.

Pursuant to *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), this Court will apply Florida substantive law to the facts of this case.

*A) Count I: Intentional and/or Tortious Interference with Transland's Business*

First, Defendants argue that Plaintiff has failed to plead the required elements of this claim.

> The elements of tortious interference with a business relationship are (1) the existence of a business relationship (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship.

*Ethan Allen v. Georgetown Manor*, 647 So. 2d 812, 814 (Fla. 1994).

Plaintiff has successfully pled all four elements required for this cause of action.

Specifically, Plaintiff alleges (1) a business relationship with Doss, (2) of which WFB and WFV were aware, (3) that WFB and WFV intentionally interfered with that relationship by inducing Doss to terminate his contract with TFS, and (4) that TFS suffered damages as a result.

Defendants next argue that Florida Law does not allow an action for tortious interference with an at will contract, and that the contract between Doss and TFS was at will. Furthermore, Defendants allege that their actions are protected by Florida's "competition privilege."

> The general rule is that an action for tortious interference will not lie where a party tortiously interferes with a contract terminable at will. This is so because when a contract is terminable at will there is only an expectancy that the relationship will continue. In such a situation, a competitor has a privilege of interference in order to acquire the business for himself. If a competitor proves that the interference was lawful competition he will not be found to have committed the tort.

*Greenberg v. Mount Sinai Medical Ctr*., 629 So. 2d 252, 255 (Fla. 3rd DCA 1993)(internal citations omitted) However, "whether the privilege defense exists is a question of fact which must be resolved at trial." *Id*. at 256. Therefore, Count I will not be dismissed.

*B) Count II: Intentional or Tortious Interference with Contract*

Defendants make the same arguments with regard to Count II, as they did with regard to Count I. Those arguments fail for the reasons discussed above. Defendants also argue that Count II is duplicative of Count I, and therefore should be dismissed. However, it appears that Count II

references "Non-Pipeline Loans", and Count I references only "Pipeline Loans". Therefore, the claims appear to be different and Count II will not be dismissed.

### C) Count III: Injunctive Relief

Count III seeks an injunction from this Court "preventing [HFI] from using the name 'HomeLife Financial'". (Doc. 5 at 11). As HFI is not a party to this litigation, Count III must be dismissed.

### D) Count IV: Violation of the Florida Deceptive and Unfair Trade Practices Act

This count has been abandoned as it relates to WFB, because the Florida Deceptive and Unfair Trade Practices Act (the "FDUTPA") includes an exemption for national bank associations. (Doc. 27 at 7). Defendants argue that this reasoning should extend to WFV as well because it is a wholly owned subsidiary of WFB. However, Defendants are asking this Court to make a factual determination about WFV that is inappropriate at this stage of the litigation. *See Office of the AG, Dep't of Legal Affairs v. Commerce Commer. Leasing, LLC*, 946 So. 2d 1253, 1257 (Fla. 1st DCA 2007). Therefore, Count IV will not be dismissed.

### E) Count V: Unfair Competition

Count V is based on HFI's use of the name HomeLife Financial and seeks "injunctive relief enjoining [HFI] from using the identifying name 'HomeLife Financial'". (Doc. 5 at 14). As HFI is not a party to this litigation, Count V must be dismissed.

### F) Count VI: Unfair Competition

Defendants' arguments with regard to Count VI are purely fact based. At this stage, this Court must accept the Plaintiff's factual allegations as true, and therefore cannot entertain any factual arguments made by Defendants. Thus, Count VI will not be dismissed.

*G) Counts IX and X: Unjust Enrichment and Quantum Meruit*

Defendants argue that these two counts are duplicative, and one must be dismissed. Plaintiff argues, however, that they are not duplicative because Count IX seeks relief based on a contract implied in law and Count X seeks relief based on a contract implied in fact. Florida courts appear to have created unnecessary confusion regarding the concepts of unjust enrichment and *quantum meruit. See, e.g, Commerce Partnership 8098, Ltd. v. Equity Contracting Co., Inc.* 695 So. 2d 383, 385-86 (Fla. 4th DCA 1997) (en banc). However, this Court finds the distinction to be quite plain. *Quantum meruit* is "[t]he reasonable value of services; damages awarded in an amount considered reasonable to compensate a person who has rendered services in a quasi-contractual relationship." Black's Law Dictionary (8th ed. 2004). Unjust enrichment, however, is "[t]he retention of a benefit conferred by another, without offering compensation, in circumstances where compensation is reasonably expected." *Id.* In this case, Defendants have not provided Plaintiff with any services, therefore a claim for *quantum meruit* is inappropriate here. Therefore, Count X will be dismissed.

**IV. Conclusion**

    Accordingly, it is

    **ORDERED** that Defendants' Motion to Dismiss (Doc. 25) is **GRANTED** in part and

**DENIED** in part. Counts III, V, VII, VIII and X of the Amended Complaint (Doc. 5) are hereby

**DISMISSED**. Plaintiff shall have leave to file a second amended complaint within twenty (20)

day of this Order.

    **DONE** and **ORDERED** in Chambers, Orlando, Florida on May 7, 2007.

 

**GREGORY A. PRESNELL**
**UNITED STATES DISTRICT JUDGE**

Copies furnished to:

Counsel of Record
Unrepresented Party